**ALAN M. NELSON**

ATTORNEY AT LAW

———

3000 MARCUS AVENUE, SUITE 1E5
LAKE SUCCESS, NEW YORK 11042
TELEPHONE: (516) 328-6200
FAX: (516) 328-6354

NEW YORK OFFICE:
111 JOHN STREET
SUITE 640
NEW YORK, NY 10038

December 27, 2007

BY ECF & FEDERAL EXPRESS
Hon. Loretta A. Preska
United States Courthouse
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. Delsic Rey
07 Cr 313 (LAP)

Dear Judge Preska:

Delsic Rey is scheduled to appear before your Honor on January 24, 2008 to be sentenced, pursuant to his plea of guilty to the above-captioned Indictment charging him with Conspiracy to Commit Mail Fraud in violation of Title 181 United States Code sections 1341.

Upon review of the Pre-Sentence Report (PSR) prepared by the Probation Department the defendant objects to one aspect of calculation of the advisory Guideline Range, a two level enhancement pursuant to U.S.S.G. 3B1.3 premised upon his abuse of a position of trust (PSR 23)specific

More significantly, by this memorandum and for the reasons more fully set forth herein Delsic Rey respectfully requests that the court impose a sentence based upon all the factors set forth in 18 U.S. C. 3553(a), Gall v. United States, 06-7949, __ S.Ct. __ (2007), Kimbrough v. United States, 06-6330, __ S.Ct. __ (2007); United States v. Booker, 125 S.Ct. 738 (2005) and United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005). It is submitted that in imposing such sentence the court has the discretion and authority to impose a sentence below the advisor guideline range of 21-27.

Therefore, please accept this memorandum as an effort, pursuant to United States Sentencing Guidelines section 6A1.3, to focus the Court's attention on those issues important to the determination of the defendant's sentence so as to facilitate the imposition of an appropriate sentence.

*Abuse of Position of Trust*

Probation agrees with the government's contention in its letter pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2nd Cir. 1991) that the defendant abused a position of trust thereby

Hon. Loretta A. Preska
December 27, 2007
Page 2

requiring a 2 level enhancement pursuant to U.S.S.G. 3B1.3. (PSR 23).  Rey contests this enhancement.

The sentencing enhancement for abuse of a position of trust applies where a defendant used his position of public or private trust in a manner that significantly facilitated the commission or concealment of the crime. U.S.S.G. 3B1.3. Professional or managerial discretion characterizes the position, and people holding these jobs are ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. *Id.*, comment (n.1). Their positions are those of substantial discretionary judgment that is ordinarily given considerable deference.  The adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by these factors. *Application Note 1*. Additionally, for the enhancement to apply the defendant must have misused discretionary authority that the victim entrusted to him on the victim's behalf. See *United States v. Jolly*, 102 F.3d 46, 48 (2nd Cir. 1996).

Delsic Rey was employed as a claims examiner for York Insurance.  It is important to note this title and correspondingly the job's responsibilities differ markedly from a claims adjuster. As a claims examiner Delsic Rey was provided with No-Fault files for the review of claims made. Each file presented to Rey had a case reserve of $2,500.  Once that initial reserve is exhausted the examiner must make a separate request for a reserve increase from a supervisor.  At York this was made by the examiner submitting a Reserve Increase Request Form to his supervisor.  Each form contained the claim number, insured party, inured party, amount of payment and payee.

Upon approval of a reserve increase request the supervisor sends an e-mail to the examiner advising of the change in reserve. The Reserve Increase Request Form is then scanned into that files documents so that a payment request can be made.

The next step for issuance of a check is for the examiner to submit a payment request for the specific payee for approval to the supervisor.  Upon approval of payment by the supervisor the supervisor then forwards the request to York's main accounting office for payment of claim and the mailing of the check.

No examiner, only the examiner's supervisor had authority to authorize payment over $2,500. Delsic Rey did not process or approve the checks from his work station Rather Rey submitted the request for approval by his supervisor who then forwarded the approved request for payment.

This detailed description of York's procedures is provided so the court can better understand Rey's limited amount of discretion and the extent of supervision over his requests for payments to be issued.  The common thread in all cases where the 2 level enhancement for abuse of position of trust has been applied is "the extent to which the position provides the freedom to commit a difficult to detect wrong". *United States v. Barrett*, 178 F.3d 643, 646 (2nd Cir. 1998).

Hon. Loretta A. Preska
December 27, 2007
Page 3

The level of supervision upon Rey clearly did not provide such freedom. Indeed the internal detection of the offense by York evinces the fact that due to his limited discretion and the level of supervision upon him his position did not provide Rey with "the freedom to commit a difficult to detect wrong". Indeed his position was in this regard not dissimilar to that of a bank teller or clerk, positions for which Application Note 1 makes clear the enhancement for such individuals embezzlement does not apply.

Accordingly, it is submitted that both due to Rey's limited discretionary authority and the level of supervision upon him the 2 level enhancement pursuant to U.S.S.G. 3B1.3 should not be applied.

## BACKGROUND

To fully understand why and how Delsic Rey came to participate in the instant offense it is important for the court be informed of the defendant's background.

Born in 1963 in Anguilla, British West Indies, Rey is the only child of the marriage between Hugo Rey and Elsie Proctor. The couple separated when Rey was 12 years old. Raised by his mother, a hotel attendant, Rey lived an essentially middle class life, moving from Anguilla to St. Thomas in 1981 to attend the University of the Virgin Islands from which he acquired his BA in 1984.

In 1987 Rey emigrated to the United States residing in New Jersey where he has lived continuously. In 1994, the year Rey was naturalized as a United States citizen, he married Jacqueline Morton, who is employed by the Corrections Department for the State of New Jersey as a senior clerk transcriber. The couple have two children Monisha and Malkon Rey, ages 14 and 9 respectively.

Rey has been employed continuously since his emigration to the United States exclusively in the insurance industry. Between 1987 and his arrest in discharge from employment by York Insurance in September 2006 Rey was employed a claims examiner for various insurance carriers processing No-Fault claims. From 2000-2005 Rey was employed as a claims resolver at American Arbitration. Between the date of his arrest and guilty plea Rey again worked as a claims examiner. Following his guilty plea Rey enrolled in commercial driver's program offered by Coach Bus USA, acquiring his commercial bus operator's license this past September. Since that date he has been employed as a bus operator by Coach.

Since 2002 Rey has owned and operated his own office cleaning business, Rey's Cleaning Service, which he operates out of his home. Through the business which he and his wife operate out of the family residence the Rey's have supplemented their income earning approximately $12,000 annually.

Hon. Loretta A. Preska
December 27, 2007
Page 4

As PSR Paragraph 39 states the Rey's reside in a home they purchased in 1997 for $150,000 located at 54 Appleman Road, Somerset, New Jersey. In addition to Rey's nuclear family his mother, Elsie Proctor and mother-in-law, Annette Rogers, also live in the residence.

As related in PSR 40 Annette Rogers is currently undergoing chemotherapy treatment for breast cancer as the defendant's mother recuperates from treatment for the same illness. However the PSR fails to detail the extent to which the dual burdens of assisting in the care for his mother and mother-in-law affected the defendant and his family, leading eventually to the defendant's participation in the offense.

Over the past two years the emotional, financial and logistical strains occasioned by caring for these family members while raising two small children have been enormous.

The defendant's mother has been residing with him since her arrival in the United States in 1998. Diagnosed with breast cancer in 1997 Elsie Procter had a mastectomy and follow-up chemotherapy shortly after her emigration to the United States. The defendant and his wife provided emotional and logistical support throughout her treatment, however because Mrs. Proctor qualified for heath care coverage they did not have to shoulder the significant financial burdens such treatment entails.

In early 2006 Annette Rogers, who resided at the time in St. Thomas, U.S. Virgin Islands, was similarly diagnosed with breast cancer. The cancer was in an advanced stage requiring an immediate mastectomy to be followed by a regimen of chemotherapy. Unfortunately, because of Ms. Rogers relative youth, coupled with the medical necessity for immediate surgery she did not initially qualify for health coverage. As a consequence, the Rey's assumed the financial burdens of caring for Ms. Rogers in the United States and most significantly subsidizing her medical expenses. (See Exhibit "C").

The consequences of assisting with the care of Ms. Rogers were devastating. Jacqueline Rey was required to exhaust all of her leave time from the Corrections Department to assist in her mother's care. Lacking insurance the Rey's converted their daughter bedroom to care for Ms. Rogers with Jacqueline Rey responsible for changing her dressings, transporting her to daily medical appointments and administering medication. Unable to take a leave of absence due the family's tight budget, the defendant was required to curtail his hours of work to likewise provide assistance while helping with the children and his own mother. These time burdens placed upon the Rey's necessarily cut deeply into their ability to operate their cleaning business upon which they had relied to supplement their income.

It was during this period of time, commencing in March 2006 that Delsic Rey, after working as a claims examiner for over 19 years without so much as a blemish upon his record, in desperation succumbed to the temptation of embezzlement.

Hon. Loretta A. Preska
December 27, 2007
Page 5

18 U.S.C. 3553(a)(1) requires that the Court consider the nature and circumstances of the offense and the history and characteristics of the defendant in determining the particular sentence to be imposed. Although not offered as an excuse or to minimize the defendant's wrongful conduct it is important for the Court to understand *why* Delsic Rey, at the age of 44, married, with 2 children and with an established career in the insurance industry came to be involved in the instant offense.

Similarly it is important to understand *how* he came to participate in the offense. In early 2006 Rey was contacted by his co-defendant Sheba Edwards who inquired whether she was entitled to additional benefits following her accident. In substance Ms. Edwards offered to share any additional benefits the defendant could acquire for her. Following a number of such inquiries and commencing in late April 2006, as his financial plight became more and more difficult Delsic Rey succumbed to the temptation and participated in the instant offense.

In substance a perfect storm of financial desperation coupled with an unsolicited opportunity led Rey to participate in the instant offense.

## NON-GUIDELINE SENTENCE

It is against this background that the defendant asks that the court evaluate his request for the imposition of a non-guideline sentence.

In the wake of <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) the Second Circuit in <u>United States v. Crosby</u>, 397 F.3d 103 (2nd Cir. 2005) has recently instructed district courts with some pertinent suggestions as to the appropriate procedure to follow in sentencing. In so doing the court has instructed that although the Sentencing Guidelines are no longer mandatory the sentencing court must consider the guidelines which *normally* require determination of the applicable guideline range. The court should then, after considering all the additional factors set forth in 18 U.S.C. 3553(a) decide whether (i) to impose a sentence that would have been imposed under the guidelines (i.e. a sentence within the applicable guidelines range or within permissible departure authority, or (ii) to impose a non-guideline sentence. (<u>Crosby</u> <u>supra</u> ). That scope of discretion in determining the reasonableness of a sentence within the context of a 18 U.S.C. 3553 analysis has surely been reinforced most recently by the Supreme Court in <u>Gall v. United States</u>, 06-7949, ___ S.Ct. ___ (2007), <u>Kimbrough v. United States</u>, 06-6330, ___ S.Ct. ___ (2007).

In considering the imposition of a non-guideline sentence it is respectfully requested that the court consider the factors articulated in 18 U.S.C. 3553(a) as they apply to Delsic Rey.

In so doing <u>Crosby</u> directs the sentencing court to evaluate all of the factors enumerated in 18 U.S.C. 3553(a) to determine an appropriate sentence. The first factor 3553(a) instructs the court to consider is the nature and circumstances of the offense and the history and characteristics of the defendant.

Hon. Loretta A. Preska
December 27, 2007
Page 6

The circumstances of the defendant's participation in the offense are set forth in some detail above hence the details will not be repeated. This offense represents Delsic Rey's, age 44, first conflict with the law. In summary Rey, 44 years old of age succumbed after 19 years as a claims examiner to the temptation of embezzlement while engulfed in the midst of a financial crisis caused by his assumption of the responsibility to care for his mother-in-law. If ever there were an example of a good person doing the wrong thing as a consequence of attempting to do right, surely this is it.

### *Aberrant Behavior.*

Clearly, as reflected above, this isolated act of illicit activity engaged in by Delsic Rey was a product of the convergence of his dire financial condition, occasioned by the medical necessity to care for his mother-in-law combined with an unsolicited albeit illicit opportunity to acquire funds.

In the post-*Booker* era it is respectfully submitted that the Court may seek guidance in determining the appropriate sentence to impose in the context of the factors set forth in 18 U.S.C. 3553 by comparing how such a factor was considered pre-*Booker* in considering whether a departure pursuant to U.S.S.G. 5K2.0 was appropriate.

While economic hardship alone was not sufficient to justify a departure U.S.S.G. Ch 1, Pt. A, 4(d) states "The Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures". Utilizing this departure theory the Ninth Circuit in *United States v. Fairless*, 975 F.2d 664 (9th Cir.1992) affirmed a departure for aberrant behavior in a bank robbery case where it was the defendant's first criminal offense and the defendant was under extreme pressure due to his recent loss of employment. Likewise in *United States v. Liebig*, No.1:CR-93-226(M.D. Pa.2/24/94), the court departed from a 46-57 month guideline range to 2 years probation with home detention because the offense was atypical and defendant's behavior aberrant. Defendant was 38 years old, was married with three children and paid a substantial portion of his income to support his family.

In this district, Judge Sweet in *United States v. Giles*, 768 F.Supp. 101 (S.D.N.Y. 1991), in a case where the defendant's status is remarkably similar to that of Delsic Rey, departed from a guideline range of 57-71 months to a 18 month sentence. In *Giles* the defendant like wise had no prior criminal history and was in dire financial distress at the time of his commission of the offense.

In *Giles*, Judge Sweet stated the combination of factors including the defendant's previously unblemished criminal history and dire financial difficulty warranted a downward departure "because the unique circumstances presented by this case involve mitigating circumstances not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. 3553(b)." It is submitted that such a situation, the aberrant nature of the conduct, Rey's financial status, the underlying reason for his family's financial crisis and his lack of criminal history all

Hon. Loretta A. Preska
December 27, 2007
Page 7

combine to create a similar basis for the imposition of a non-guideline sentence pursuant to 18 U.S.C. 3553(b).

### *Extraordinary Family Circumstances.*

As pointed out above Rey is 44 years of age. He is married and the father of two children who reside in the marital residence. In addition he supports both his mother and mother-in-law, who remains in need of significant medical attention. Although in dire financial distress, he has been able to avoid foreclosure upon his residence despite his permanent loss of employment in his profession of over 19 years as a claims examiner by acquiring a new skill, that of a licensed commercial bus operator.

Upon entering his guilty plea in September Rey informed his employer, American Transit resulting in his termination. He thereafter enrolled in the Coach Bus Company's training program acquiring his Commercial Bus Operator's license in October. Rey has since been employed by Coach Bus as an operator. (See Exhibit "D"). This position has allowed him to provide income, continue his cleaning service, and provide assistance to his mother-in-law and young children. This in turn alleviated some of the time pressures imposed upon his wife permitting her to continue full time employment with the New Jersey Department of Corrections.

As discussed by his wife in the annexed letter in the event Rey is sentenced to an incarceratory sentence the loss of his income and the time he dedicates to care for the family while his wife is working will be disastrous to the Rey's. While the defendant is incarcerated Jacqueline Rey will be required to devote a greater amount of time to caring for the family resulting in her having to shorten her hours of work. Having exhausted her leave time the family income will of necessity be diminished. The combined effect of the loss of his income, the loss of supplemental income from the cleaning business, and the diminishment of his wife's income , while the expenses of caring for two children and two ailing parents will have a devastating effect upon the family. The bank shall surely foreclose upon the residence, forcing his wife, two children and the parents to seek other forms of residence.

Employing the analogy of evaluating the factors set forth in 18 U.S.C. 3553 in determining the appropriate sentence to impose by comparing how such a factor was considered pre-*Booker* in context of a departure pursuant to U.S.S.G. 5K2.0, it is submitted that these compelling circumstances warrant the imposition of a non-guideline sentence pursuant to 18 U.S.C. 3553(a).

Pre-*Booker* Downward departures pursuant to U.S.S.G 5K2.0 were permissible where a sentence has the potential for serious family hardship. See *United States v. Alba*, 933 F.2d 1117 (2nd Cir.1991). In *Alba, supra*, the Court indicated that while the guidelines consider family circumstances not ordinarily relevant, the departure was warranted because the defendant supported his wife of 12 years, two young daughters and his grandmother. Certainly, the hardship that would confront the Rey family, upon his incarceration would be similar, indeed even more disastrous in

Hon. Loretta A. Preska
December 27, 2007
Page 8

nature and effect than that of Alba.. Similar downward departures due to extreme family hardship had been granted in *United States v. Mills*, 2 Fed.Sent. R. 173 (S.D.N.Y.1990) and *United States v. Gonzalez*, 2 Fed. Sent. R. 81, 83 (S.D.N.Y.).

It is submitted that the Rey family is similarly situated. The catastrophic consequences of Rey's incarceration upon his family are such under the circumstances that the imposition of a non-guideline sentence is warranted.

## 18 U.S.C. 3553(b)(2) Factors

The "Parsimony Clause" contained in 3553(a) mandates that the sentencing Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)of this subsection". Those factors are evaluated as they relate to Delsic Rey below:

18 U.S.C. 3553(b)(2)(A) requires the Court first consider the traditional sentencing objective of just punishment.

Without in any manner seeking to minimize the nature of Rey's offense it is important for the court to consider that Rey has lost his position as a claims examiner and will never be allowed to return to the only  profession, the insurance industry, in which he has been employed for the past 19 years.

While the defendant's family life has suffered as a result of his conduct, his wife and children remain steadfast in their support. He has disgraced his family, himself and his wife. Certainly he and his family have suffered from and will continue to suffer from a great deal of difficulty in the future as a consequence of his malfeasance. Acquiring the type of secure employment he previously held due to his misdeeds is a certainty. As discussed above, understanding this reality as well as his obligations to family and to make restitution Rey has taken immediate steps to address them. He has acquired his commercial operators license and is now employed by Coach Bus, changing careers at age 44 of necessity from claims examiner to bus driver.

In addition the defendant is taking steps to insure that complete restitution is made to York. Towards that end Rey has contacted his family in Anguilla for the purpose of acquiring a mortgage upon two small parcels of land that were given to him by family members as college graduation and marriage gifts respectively. Rey desires to demonstrate to the Court both his remorse and desire to repay his debt by such action. Rey hopes that by acquiring such a mortgage he could make a good faith significant payment towards making York whole. His hope is that the Court would consider his determination to meet this obligation as a basis to allow him to remain employed and available to assist his family during these difficult times while making mortgage payments upon the loan. He urges the Court impose a non-guideline sentence of home confinement to allow him to work and

Hon. Loretta A. Preska
December 27, 2007
Page 9

He implores the Court to allow him the opportunity to serve his sentence as home confinement allowing to leave the household for two reasons only: (1) work and (2) care for the needs of his family during the periods of time his wife works.

It is submitted that under these circumstances a sentence of home confinement clearly does reflect the seriousness of the offense, to promote respect for the law and to provide just punishment.

Subsections (B) and (C) require the Court consider the need to afford adequate deterrence and to protect the public from further crimes of the defendant as a consequence of his misconduct, general and specific deterrence.

As discussed above with respect to general deterrence Rey's termination and conviction of a federal crime clearly accomplish the goal of demonstrating to similarly situated claims examiners the peril they face were they to engage in any form of embezzlement. The loss of employment, bar from the industry in which had worked for close to 20 years, financial ruin and its collateral consequences, mandatory complete restitution, and loss of liberty send a loud and clear message to the insurance industry of the consequences of such malfeasance.

Delsic Rey's remorse and acceptance of responsibility for his wrongful conduct have been overwhelming. Since the defendant's arrest the consequences of his conduct has colored every aspect of his life. As discussed above the likelihood of recidivism given Rey's past law abiding conduct and underlying basis for his participation in this offense are remote. Moreover, clearly Rey's removal from his position and ban from the industry provide adequate protection from his engaging in similar conduct in the future. Accordingly it is submitted that concerning specific deterrence a sentence of home confinement would clearly address this sentencing objective.

**Other 18 U.S.C. 3553 factors**

*Sentencing Disparity*

18 U.S.C. 3553(6) requires that the Court consider the need to avoid unwarranted disparity in sentencing between defendants with similar records who have been found guilty of similar conduct.

In determining the sentence to be imposed it is important for the Court to consider two factors as they relate to the issue of sentencing disparity. First, as discussed above Rey is prepared and is taking affirmative steps to make full restitution. However, he in fact received well under $10,000 from Ms. Edwards for his transgressions. Second, although he and his co-defendant Sheba Edwards are held jointly liable for the full amount of loss, engaged in almost identical conduct and have no prior criminal history, Rey faces a significantly greater sentence as a consequence of the application of a two level enhancement pursuant to U.S.S.G. 3B1.3 for his abuse of his position of

Hon. Loretta A. Preska
December 27, 2007
Page 10

trust.[1]

The legal question of the applicability of the enhancement is addressed above. The defendant submits that sentencing policy issue articulated in this subsection when considered in light of the facts and circumstances of the offense further support the Court imposing a non-guideline sentence upon Delsic Rey.

*Restitution*

!8 U.S.C. 3553(a)(7) requires that the Court consider the need to provide restitution in determining the particular sentence to be imposed. As discussed above Rey not only acknowledges his obligation to make restitution, he is making affirmative steps to insure that the payments are made.

Towards that end Rey has contacted his family in Anguilla for the purpose of acquiring a mortgage upon two small parcels of land that were given to him by family members as college graduation and marriage gifts respectively. As the annexed letter from Chubb Group evinces, the defendant has likewise made direct contact through counsel with Chubb to make the necessary arrangements forth payment of restitution. (See Exhibit "A"). Clearly Rey would be unable to make such mortgage payments were he to be incarcerated. This would compromise his ability to make restitution. Moreover following release from custody Rey's financial obligations would limit the amount of restitution he could make across time. Accordingly were Rey to receive a sentence of home confinement with the condition of being permitted to attend work the statutory goal of considering the need for restitution would be greatly facilitated.

Although the defendant's presumptive sentencing range is 21-27 months the Second Circuit has made clear "now that the mandatory duty to apply the Guidelines is excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance" United States v. Crosby, 397 F.3d at 111. The court expressed every confidence that district court judges will do so and that resulting sentences will continue to reduce unwarranted disparities *while now achieving somewhat more individualized justice*." United States v. Crosby, 397 F.3d at 114. (italics added).

As discussed above the circumstances of the defendant's background and present status as well as the circumstances under which he participated in the offense are indeed unique. Although every individual who faces incarceration suffers from the economic and familial dislocations caused as a consequence, it is respectfully submitted that an incarceratory sentence imposed on Rey will have a greater negative impact upon him than others who engaged in similar conduct due to his

---

[1] With similar Criminal History Categories of I Rey's advisory Guideline Level is 16 with a sentencing range of 21-27 months while Edwards is Level 14 with a sentencing range of 15-21 months.

Hon. Loretta A. Preska
December 27, 2007
Page 11

family's status.

It is submitted that the imposition of a non-guideline sentence imposing a period of home confinement and community service, possibly combined with a shorter period of incarceration, would facilitate compliance with the criteria set forth in 3553(a) while permitting Delsic Rey to Make substantial restitution.

For these reasons it is respectfully requested that this court impose a non-guideline sentence upon the defendant Delsic Rey.

## CONCLUSION

When the Court imposes sentence upon a person, it naturally takes into account many factors, including the traditional objectives of deterrence, punishment and rehabilitation, carefully balanced by the gravamen of the offense, the defendant's culpability, his background and any particular factors about the defendant that should and do demand special attention.

The Court is well aware of the facts of this case, having been provided the extensive case history set forth in the Presentence report and this document and therefore such will not be reviewed any further herein.

Delsic Rey stands before the court having plead guilty to the instant Indictment charging him with Conspiracy to Commit Mail Fraud. This conviction represents his first conflict with the law.

In determining the sentence to be imposed, the court is faced with the task of balancing society's interests with those of the defendant. In analyzing that juxtaposition, we would impress upon the Court Mr Rey's background, the underlying reasons that led to his participation in the offense, the devastating impact an Incarceratory sentence will have upon his family and the steps he has taken towards making restitution and post offense rehabilitation.

Rey has led an essentially law abiding life. His conduct in participating in the offense is in sharp contrast to his demonstrated history of continuous employment, child rearing and law abiding life. His employment history as a law abiding hard working family man concerned with duty and responsibility presents an extremely low risk of danger or recidivism.

While not proffered as an excuse the underlying reasons that led the defendant to participate in the offense are in sharp contrast to his past conduct. His commitment to family demonstrate the likelihood that Rey will be a meaningful contributor to his community in the future.

These are indeed the type of factors that 18 U.S.C. 3553(a) and in the post Booker era United States v. Crosby, supra mandate that the court consider in imposing sentence. As pointed out above this conviction shall represent Rey's first criminal conviction. This case does not involve violence

Hon. Loretta A. Preska
December 27, 2007
Page 12

nor firearms.  Delsic Rey asks that the court consider these factors in determining what sentence should be imposed.

Annexed hereto as Exhibit "B" are letters from Jacqueline Rey, Annette Rogers, Elsie Proctor and others that poignantly describe the tragedy that surrounds the defendant's participation in the offense as well as the consequences of his incarceration.  We ask that the Court closely consider this letters when evaluating the arguments set forth herein in determining the appropriate sentence to impose upon Delsic Rey.

For the aforementioned reasons we urge the Court to fashion a sentence recognizing Delsic Rey's, conduct and lack of criminal history balanced by society's interests.  In light of these factors, we urge the court to adopt the arguments set forth above.  It is requested that the court impose a non-guideline sentence that would include components of home confinement and community service in lieu of the presumptive guideline range.

Respectfully submitted,

Alan M. Nelson, Esq.

AMN/en

cc: AUSA Bill Harrington
    USPO Smyla Jones

EXHIBIT "A"

# CHUBB GROUP OF INSURANCE COMPANIES

15 Mountain View Road
Mailing: P.O. Box 1616, Warren, NJ 07059-1616

September 6, 2007

Alan Nelson Esq.
3000 Marcus Avenue, Suite 1E5
Lake Success, New York  11042

<table>
<tr><td>Re:</td><td>Insured:</td><td>York Insurance</td></tr>
<tr><td></td><td>Policy:</td><td>68005714</td></tr>
<tr><td></td><td>Principal:</td><td>Delsic Rey</td></tr>
<tr><td></td><td></td><td>Sheila Edwards</td></tr>
</table>

Dear Mr. Nelson

This will confirm your telephone conversation of September 5, 2007 with Patty Duffy of our office in which you requested a letter indicating the amount of the loss and who should receive the restitution.

Federal Insurance Company is the Crime carrier for York Insurance, who has submitted a loss in the amount of $130,500.00 resulting from theft by the principal.  Federal Insurance Company paid $30,500.00 and our insured was subject to a $100,000.00 deductible.

I have enclosed a copy of the Release & Assignment assigning us subrogation rights.  Under the terms of our policy with the insured, we are entitled to first recoveries.

Thank you for your time and assistance.

Very truly yours

Chubb & Son,
A division of Federal Insurance Company

Karen Wiatroski
Fidelity Recovery Examiner
Chubb & Son
kwiatroski@chubb.com
Phone 908-903-5683
Fax 908-903-5537

EXHIBIT "B"

To Whom It May Concern:

November 14, 2007

I have known Del for most of my life.  We have been marriage for 13 years,
just celebrated on October 22, 2007.   We have two lovely children Monisha
Rey, and Malkom Rey
Both of our parents have breast cancer and reside with us at our home.
Del has been a strong and constant support for me, not only as a husband,
but as a 100% partner in every aspect of our life.  Having to take care of my
mother who removed her breast last year due to breast cancer, has been very
hard and difficult to deal with.    Sometimes when I could not take my
mother to the hospital for her chemo treatment or her appointments.   Del
took her to her appointments for me. I have been mentally and emotiontially
stress out having to deal with and cope with my mother's health problems.
Del has been the person that has given me the courage, and strength to keep
on keeping on.  With all the problems and the work around the house, I
would surely go into a depressive state if he is not around.
I need Del in my life so he can help me to continue coping and dealing with
life's issues that seem to arise daily.   Our lives would be displaced,
devastated and destroyed, with him not being around for any period of time.
It would be very impossible and difficult for me to maintain the house on my
salary, and with all of the different issues at home to deal with.    I would
have to sell the house, because I would not be able to pay the mortgage
without him by myself.  I would have to move and displaced the kids who
are doing so well in their schools at this time.   This would cause a great
disruption of our parent's lives and their treatments, along with their doctor
visits and church families.   Our lives at all aspects would see never ending
hardships.  If Del is not around in my life daily to help with the kids, bills,
homework, chores and our parent's health issues, it would be pure turmoil.

Del is a wonderful husband and excellent father, myself, the kids and both of
our parents, need to have him in our lives at all times.  Not having him
around will be unfair, and will punish our entire family at full cost, for the
rest of our natural lives.


Sincerely yours
Jacqueline  Rey

November 10, 2007

To Whom It May Concern,

My dad Del has so many good characteristics. I will pick the ones I love the most. Since I was a little girl he's always been my knight in shining armor. Always there for my brother and I. School plays and musicals to dance recitals and basketball games. I didn't say he was at every one, but the ones he did come to he made them count.

The times when dad got us out of trouble, my brother and I can't even count how many times Dad has pulled us out of hot water. I must admit that sometimes we were in the wrong. But the punishment would be so severe that dad would help lessen our sentence.

A comedian, Dad is always making jokes. That's one of my favorite things about him. He isn't stuck up just because he is a parent. He laughs with us. We reminisce on all the fun times even the bad times. Dad can find the joke in anything.

Trustworthy, my brother and I won't hesitate to confine in our Dad if something is seriously bothering us. From time to time we just need a pep talk. A pat on the back from Dad can have you feeling like a million bucks.

Dad always sticks to his word. If he says he is going to do it, he will. If he says it's going to happen it will. These promises don't happen right away but if you hang in there and have faith in him everything will work out.

I could go on and on about him but I will leave you with these pieces of my dad.

Delsic Rey.

Sincerely,
**Monisha Rey**

12-4-07

DEAR Judge

My Name is Elsie Proctor the Mother OF Del he is My true hero I know what he did Was Wrong trying to help his Mother In law. Judge please find forgiveness in your heart and do not Send him to Jail he Takes Care OF me along with his family. I love him very very much and with out him around would Just put me to My grave faster. I am 79 years Old and Will be making 80 March 19 I had brest cancer and now Suffer from blood presser and different things. My entire life Will be over if he is not Around to take me to my doctors. Judge I am beggin you to please forgive my Son he is a good Child Who is Sorry For what he did and I Kown he Will Never do it again. I Know you have the love OF god in your heart and will Send my Son home to me please allow him to continue taking care of his family and me. May god continue to guide you and bless you

Elsie Proctor

12/4/07

To Whom It May Concern

Dear Judge

I am Anette Edwards who is Del mother
in law. My daughter Jackie and
Del took me in their house from
St. Thomas because i had breast
cancer.
I love my son in law very much
even though he did something wrong
trying to help me out with paying
my doctor bills please do not send
him to Jail. this would destroy me
and the whole family. please with
the mercies of god and the goodness
of your heart give him back to
us. he will never do something
like that in his life again if
it was not for him and my daughter
i would not be alive today. please
Judge give him back to us so
he can continue taking care and
Providing for his family
God Bliss you

Anette Edwards

# United Methodist Church at New Brunswick

### Rev. Dr. Sydney S. Sadio, Pastor

25th November 2007
TO WHOM IT MAY CONCERN

This is to certify that I have known DELSIC REY for the past 12 years. He and his family are members of the United Methodist Church at New Brunswick and they actively participate in the life of the congregation.

Our church is a multi cultural, multi racial community of faith with members from over 31 different countries and is a wonderful model of inclusiveness, tolerance and diversity. Del and his family are very much at home in this setting.

Del is a person of good character with strong family values . He demonstrates leadership qualities. He is intelligent and trustworthy, gets along with people, is a team player and respectful of others.

I have no reservations whatsoever in recommending him for your consideration as I am sure he will be an asset to any organization and workplace.

Sincerely,

Sydney S.Sadio
Pastor

To Whom It May Concern

12/03/2007

Dear Judge,

I am writing to let you know that I have known Del and his family for the past five years.
I have been his daughter Monisha's soccer coach for that time and now I am Malkom's
coach also. Del and his family attend the games and we have gotten very close over the
years. We were talking one day and he told me what he did, and he said how wrong he
was and what a bad choice he made. I know he made a very bad choice also, but Judge
please forgive him and grant him mercy by not sending him to jail. He is a very nice guy
who made a bad mistake and should be given a second chance. I know that he is sorry
for his actions; he says it all the time. He is a very good father, as I can tell especially
how he gets into the game when his kids play, very attentive and caring. Judges please
allow him to continue doing good things for his family. I trust that you will spare him
from prison, so that he continues with his life and his family life and involvement in
soccer with his kids.

Truly yours

Oscar Brown

To Whom It May Concern

12/01/2007

Dear Judge,

I am writing to let you know that I have known Del and his family for the all my adult
life.  Del and his family are very good friends of mine.  Del and I went to school back in
Anguilla.  We have remained very close over the years.  I know both his father and
mother and all his siblings.   He came from a very good Christian family with a good up
bringing    He is a family guy and has always been.  We have looked out for each other
over the years.  I know what Del did was very wrong and very bad choice. He is a very
nice guy who deserves a second chance.  We have discussed this matter over and over,
and I can say that my buddy relives his mistake every time.  I know he regrets terribly,
and will never make another mistake like that again, in the rest years of life.  I am asking
you Judge, to please have mercy upon him, and do not send him to jail.  His family needs
him very much in their lives, without him every things will go up side down.  His mother
and his mother in law also will suffer from his absence, because they live with them.   I
trust that my letter will help show that Del is a very nice guy who is sorry and is asking
for forgiveness.


Respectfully yours

Joseph Hazell

To Whom It May Concern

12/07/2007

Dear Judge,

I am writing to let you know that I have been the neighbor of Del and his family for the past seven years. Del and his family live right next door to me and my family. We share many happy times together along with our families. He and his family have always been very friendly and helpful to me and my family. We look out for each others homes when either family takes a vacation. I know that Del has made a very bad choice when he told me about what happen, but he is a very nice person who deserves a chance to do better. I know that he will never make another mistake like that again, because when ever we talk he is always beating him self up and saying he let himself and his family down. I am begging you to please have grace and mercy upon him, and do not send him to jail. His family needs him very much in their lives. Please let him have a chance to go forward with his life and continue to be the good neighbor and good person that I have known over the years.

Thank you kindly,

Steve  Hamilton

To Whom It May Concern:

12/10/2007

Dear Judge,

I have worked with Del at Empire Insurance in 1997 and that was the first time he became my friend. Del is a very nice guy who made a mistake, and need to be forgiven. Please do not send him to jail; I know that he is sorry for what he did. Del has been my friend since we met in 1997. I am pleading for him as his good friend. I know he has done wrong, but please give him a second chance.

Thanks very much

Lucille Clyne

EXHIBIT "C"

# SAINT PETER'S UNIVERSITY HOSPITAL
## DEPARTMENT OF LABORATORY MEDICINE & PATHOLOGY
254 Easton Avenue, New Brunswick, NJ 08901
(732) 745-8534     Fax: (732) 220-8595

| | | | |
|---|---|---|---|
| Patient: | **EDWARDS, ANNETTE** | Specimen #: | **S06-3391** |
| Med Rec #: | 003267726 | Hospital #: | 9613704 |
| DOB/Age | 8/13/1945 (Age: 60) | SS #: | 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 |
| Sex: | F | Collected: | 3/20/2006 |
| Location: | 1000-E OU | Received: | 3/20/2006 |
| Physician(s): | JEFFRY ZAVOTSKY, M.D. | Reported: | 3/21/2006 |

---

### **ADDENDUM PRESENT**

**SPECIMEN:**
A: LEFT AXILLA SENTINEL NODE
B: LEFT BREAST & AXILLA

**OPERATIVE PROCEDURE:**
LEFT BREAST MODIFIED RADICAL MASTECTOMY WITH INTRA-OPERATIVE LYMPHATIC MARKING, SENTINEL LYMPH NODE BIOPSY

**PRE-OPERATIVE DIAGNOSIS:**
LEFT BREAST CARCINOMA

**POST-OPERATIVE DIAGNOSIS:**
SAME AS PRE-OP



**GROSS DESCRIPTION:**
The specimen is received in two parts.

Part A is labeled Left Axilla Sentinel Node. The specimen is received fresh for frozen section and consists of a lobulated, yellow-orange, adipose tissue measuring 4 x 3 x 1 cm. Half of the specimen shows a blue tinge. On sectioning, there are three nodes identified measuring 0.3 cm., 0.3 cm. and 1.7 cm. in greatest dimension. One of the smallest nodes is overinked black. The largest node is trisected. The nodes are entirely submitted for frozen section analysis. The remainder of the specimen shows yellow, lobulated, adipose tissue. Entirely submitted in cassettes labeled A1 frozen section nodes entirely submitted, A2-A4 remainder of the specimen. ZOD/ZT/eam

Part B is labeled Left Breast and Axilla. The specimen is received fresh and consists of a mastectomy specimen weighing 290 grams and measuring 20 x 16 x 2.5 cm. The overlying tan, ellipse of skin measures 12.5 x 0.2 cm. The somewhat centralized nipple is grossly unremarkable and measures 1.2 x 1.2 x 0.8 cm. No scars are noted on the skin surface. The deep margin of the specimen is inked black. Upon sectioning, cut surface reveals a firm, well circumscribed tumor mass on the upper outer quadrant of the mastectomy, measuring 1.6 x 1.5 x 1.5 cm. The cut surface of the tumor mass reveals a tan-white, gritty tumor pulp appearance. The tumor mass is 1 cm. away from the inked deep margin. The breast parenchyma underlying the nipple grossly appears to have been previously dyed blue. No definitive lesions are grossly identified throughout the remainder of the specimen. The attached axilla measures 8 x 6.5 x 1.5 cm. Upon sectioning, multiple red-pink lymph nodes are identified ranging in size from 0.3 cm. to 1.5 cm. in greatest dimension. Cut surface of the largest node reveals a yellow-tan, homogeneous appearance. Representative sections are submitted in cassettes labeled B1 entire

---
Printed: 03/23/06  12:35 PM
**EDWARDS, ANNETTE**

Form 39306 (10/95)

# SAINT PETER'S UNIVERSITY HOSPITAL
## DEPARTMENT OF LABORATORY MEDICINE & PATHOLOGY
254 Easton Avenue, New Brunswick, NJ 08901
(732) 745-8534     Fax: (732) 220-8595

Patient:     **EDWARDS, ANNETTE**                    Specimen #:  **S06-3391**

submitted serially sectioned nipple, B2 representative sections of overlying ellipse of skin, B3 deep margin closest to tumor mass, B4 tumor mass with portion of overlying skin, B5 and B6 remainder of tumor mass, B7 breast parenchyma adjacent to tumor mass, B8 upper outer quadrant, B9 lower outer quadrant, B10 upper inner quadrant, B11 lower inner quadrant, B12 and B13 non-sectioned lymph node, B14 the largest bisected node.   LAS/eam

ZTK, LAS/EAM/3/21/2006

### INTRAOPERATIVE CONSULTATION:
PART A – SENTINEL LYMPH NODE, POSITIVE FOR METASTATIC CARCINOMA.  RENDERED BY DR. OLMO.

ZAIDA OLMO-DURHAM,M.D./eam/eam

## FINAL DIAGNOSIS:
PART A – LEFT AXILLA SENTINEL NODE, BIOPSY:
METASTATIC DUCTAL CARCINOMA INVOLVING ONE OF THREE LYMPH NODES (1/3).

PART B – LEFT BREAST AND AXILLA, RADICAL MASTECTOMY WITH LYMPH NODE DISSECTION:
1. INFILTRATING DUCTAL CARCINOMA.
   THE TUMOR MEASURES 1.6 CM. IN GREATEST DIMENSION AND IS LOCATED IN THE UPPER OUTER QUADRANT.THE TUMOR IS HISTOLOGIC GRADE 2 AND NUCLEAR GRADE 3. NECROSIS AND CALCIFICATIONS ARE ASSOCIATED WITH THE TUMOR. VASCULAR INVASION IS IDENTIFIED.
2. DUCTAL CARCINOMA IN-SITU (DCIS), COMEDO CARCINOMA TYPE IS ALSO PRESENT AND IT CONSTITUTES APPROXIMATELY 10% OF THE TUMOR MASS.
3. SURGICAL RESECTION MARGINS ARE FREE OF TUMOR.
4. NIPPLE, NO SIGNIFICANT PATHOLOGIC FINDINGS.
5. METASTATIC DUCT CELL CARCINOMA INVOLVING ONE OF TEN LYMPH NODES (1/10).

### COMMENT:
Tumor registry case.
Tumor staging:  pT1cN1Mx.
ER/PR, HER2/neu, Ki-67 and P53 will be performed on block B5 and results reported separately when available.

** Report Electronically Signed **
QI WANG, M.D.

eam/3/21/2006

ADDENDUM:

BREAST CARCINOMA PROGNOSTIC EVALUATION PANEL

Printed: 03/23/06  12:35 PM
EDWARDS, ANNETTE

Page 2 of 3

Form 39306 (10/95)

S
U
R
G
I
C
A
L

P
A
T
H
O
L
O
G
Y

# SAINT PETER'S UNIVERSITY HOSPITAL
## DEPARTMENT OF LABORATORY MEDICINE & PATHOLOGY
254 Easton Avenue, New Brunswick, NJ 08901
(732) 745-8534    Fax: (732) 220-8595

Patient:    **EDWARDS, ANNETTE**                    Specimen #:    **S06-3391**

| TEST | RESULTS | INTENSITY | % TUMOR CELLS STAINING |
|------|---------|-----------|------------------------|
| ER IPOX | NEGATIVE | | |
| PR IPOX | NEGATIVE | | |
| P-53 IPOX | NEGATIVE | | |
| c-erb B2 (HER-2/neu) IPOX | POSITIVE | 2+ | |

| | % TUMOR CELLS STAINING | PROLIFERATIVE RATE |
|------|------------------------|---------------------|
| Ki-67 IPOX | 30 | HIGH |

*c-erb B2 AMPLIFICATION WILL BE RETESTED BY FISH AND REPORTED SEPARATELY.

Controls are in good working order.

THIS TEST WAS DEVELOPED AND ITS PERFORMANCE CHARACTERISTICS DETERMINED BY ST. PETER'S UNIVERSITY HOSPITAL. IT HAS NOT BEEN CLEARED OR APPROVED BY THE U.S. FOOD AND DRUG ADMINISTRATION. THE REQUIRED QUALITY CONTROL TESTS ARE PERFORMED UNDER THE C.A.P. GUIDANCE CRITERIA, USING VENTANA ANALYTE SPECIFIC REAGENTS ("ASR"). THE FDA HAS DETERMINED THAT SUCH CLEARANCE OR APPROVAL IS NOT NECESSARY. THIS TEST IS USED FOR CLINICAL PURPOSES. IT SHOULD NOT BE REGARDED AS INVESTIGATIONAL OR FOR RESEARCH.

**Addendum Electronically Signed**
KAREL RASKA JR., M.D.

eam/3/22/2006

**SURGICAL PATHOLOGY**

Annette Edwards

# MEDICAL AND JOB WORKSHEET - ADULT

## Help us to help you!

Completing this worksheet will help you get ready for the interview. Or, you can complete the Adult Disability Report on the Internet at **www.socialsecurity.gov/adultdisabilityreport**. We may ask for additional information at the interview. *If you need more space, use blank sheets of paper.*

**A. Illnesses, injuries or conditions** limiting your ability to work Left breast Carcinoma—Scheduled 3/20/06 for left breast mastectomy with sentinel lymph node injection/biopsy

**B.** Date you became unable to work because of your medical condition *(month/day/year)*. 3/20/06

**C.** If applicable, **Medical Assistance Number** *(Medicaid or other)*. _____

**D. Doctor/HMO/therapist/ or other person** who treated your illnesses, injuries, or conditions, or who you expect to treat you in the future.

| NAME | ADDRESS, ZIP CODE, and PHONE NUMBER | PATIENT I.D. NUMBER | DATE FIRST SEEN | DATE LAST SEEN |
|---|---|---|---|---|
| Jeffry Zavotsky MD | 78 Easton Avenue 3rd Floor New Brunswick, NJ 08901 | | 3/15/06 | Present |
| | | | | |
| | | | | |
| | | | | |

**E. Hospitals, clinics, or emergency rooms** you visited or expect to visit because of your **illnesses, injuries, or conditions.**

| NAME | ADDRESS, ZIP CODE, and PHONE NUMBER | PATIENT I.D. NUMBER | DATE IN | DATE OUT |
|---|---|---|---|---|
| St Peters University Hospital | 254 Easton Avenue New Brunswick, NJ 08901 | | 3/20/06 | 3/20/06 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form **SSA-3381** (4-2005) Use prior editions

**OVER**

## Saint Peter's University Hospital

254 Easton Avenue, P.O. Box 591, New Brunswick, New Jersey 08903-0591 • (732) 745-8600

Annette EDWARDS, 8/13/45                    5/19/06

To whom it may concern —

Annette is under my care. Annette was diagnosed with breast cancer in March of this year and underwent a mastectomy.

Annette is now receiving adjuvant chemotherapy. Her initial dose was 4/11. Annette will receive 4 cycles of adriamycin and cytoxan (she's already completed two) and then will receive four cycles of taxol.

She will complete her treatments sometime in August.

Thank you,

Marcus Pfaullo

P.S. Jacqueline Rey is Annette's daughter and is her sole source of transportation.

---

**Saint Peter's University Hospital & Health System**
The Hospital for Women and Children • The Children's Health Network • The Cancer Institute of NJ
UMDNJ-RWJ Medical School • ElderCare Services • Partners in Care • Community Care Services
McCarrick Care Center • Saint Peter's Foundation • Catholic Health New Jersey, Inc.

A Catholic Hospital sponsored by the Diocese of Metuchen

## PARTICIPANT PLEASE COMPLETE

Site Location _____  Date _____

Name: _____  M ___ F ✓  Date of Birth: _____  Age: ____  Race: ____

Address: _____  Daytime Telephone #: _____

1. Is this your 1st visit to Mobile Health Services?
   Yes _____ No _____
2. Do you have a primary health care provider / doctor?
   Yes _____ No _____ Name _____
3. Do you have insurance? Yes _____ No _____
   Name _____
4. Do you need a Physician Directory from Saint Peter's University Hospital? Yes _____ No _____
5. Do you have a completed Advance Directive (Living Will)?
   Yes _____ No _____ (Nurse-If no, were they given one -Yes ___ No ___)

6. Are you taking any medications? Yes _____ No _____
   If yes, what kind _____
7. Do you have any allergies? Yes _____ No _____
   If yes, what kind _____
8. Have you ever been in a relationship that you were physically hurt, threatened, or made to feel afraid? Yes ____ No ____
   (Nurse to fill in) Referral Made _____
9. Do you have pain? Yes _____ No _____ If yes, please describe
   Intensity _____ Characteristics _____
   Location _____ Duration _____
   * If medication or other pain relief measures are not effective, or if you (or your child) experience pain beyond what you consider acceptable, call your physician or health care professional

## PARTICIPANT — PLEASE READ:

- I understand that the exam results will be given to me with recommendations, and I am responsible for my own health, and will be responsible for any follow-up needed.
- I understand that this is a rapid screening and is not meant to replace a full exam by my own health care provider.
- No other individual or agency may use my exam results for any other purpose without my express written permission.
- I will allow the screening health care provider or volunteer to contact me for follow up counseling as needed.
- I release the screening health care provider, all other volunteers, and Saint Peter's University Hospital from all responsibility in connection with the screening exam.
- I have received a copy of patient rights and had it explained to me and a copy of the Saint Peter's University Hospital Notice of Privacy Practices (NPP) and a short summary of same. (may have been given at previous screening.)

Please sign — I have read, understand and accept the above statements.

X _____ Date: _____

PARTICIPANT'S SIGNATURE

*If the patient will not accept the NPP or will not initial and sign that they have received the NPP, document your good faith efforts to provide the NPP and/or obtain the patient's initials or signature here:_____*

## Screening Results  ✓ indicates type of screening done

☐ Blood Pressure = _____ normal range: below 120/80
☐ T-Score= _____ desired range: no lower than negative 1.5    ☒ Cholesterol= _____ normal range below 200 mg/dL
☐ Skin Screening   ☐ Blood Sugar = _____ normal fasting range: age 59 and under, 74-106 mg/dL / age 60 and over, 82-115 mg/dL
non-fasting range: within 1 hour after a meal, <180 mg/dL / within 2 hours after a meal, <140 mg/dL

PMHx: _____

*Examination Findings:* _____

*Recommendations:* _____

*Referral:  Nurse – please check one*  ☐ NO  ☐ YES, _____

**Please Sign** that you understand the above information and instructions.

X _____ Date: _____     X _____

PARTICIPANT'S SIGNATURE                    Health Care Representative Signature

_____ Initial: _____ Date: _____ Time: _____

IF PATIENT UNABLE TO SIGN, STATE REASON

*For Office Use Only:* ATTENTION: ADMITTING/REGISTRATION PERSONNEL: PLEASE FORWARD THIS DOCUMENT TO
## COMMUNITY MOBILE HEALTH SERVICES AT 950 HAMILTON STREET
WHEN PATIENT IS BEING REGISTERED HERE AT SAINT PETER'S UNIVERSITY HOSPITAL FOR SERVICES.

SENT BY- (PLEASE PRINT): _____

DEPARTMENT: _____

MHS-1 (Rev. 9/05) Non-Stock. This form supersedes MHS-1 (Rev. 5-05, 8/01, 6/00) Non Stock

# ST. PETER'S MEDICAL CENTER
New Brunswick, NJ

## Ambulatory Care Consultation

Name: _Edwards Aravllo_

Age: _54y_   M/F: _F_   Date: _06/27/06_

Consultation requested: _G.I._   Urgent: ☐ Yes ☐ No

Reason for Consultation: _Routine Colonoscopy_

ADDRESSOGRAPH

Brief History, Studies, Treatment to Date: _____

Referred by: _Peter Hosein_   Ext./Beeper: _(651-14595)_   Attending Physician: _____

NOTE: use second consultation sheet if necessary.

Signature: _____   Date: _____

WHITE   - CHART
YELLOW   - CONSULTANT
PINK   - REFERRING PHYSICIAN

CL-38 (Rev. 3/97). This form supersedes CL-38 (Rev. 4/96).

# SAINT PETER'S UNIVERSITY HOSPITAL
New Brunswick, NJ

## Ambulatory Care Consultation

Name: _Edwards  Annette_

Age: _60 yrs_  M/F: _F_    Date: _08/18/06_

Consultation requested: _____    Urgent: ❏ Yes  ❏ No

Reason for Consultation: _Screening  Colmoscopy_

ADDRESSOGRAPH

Brief History, Studies, Treatment to Date: _____

Referred by: _Zoher Husain_  Ext./Beeper: _(651-4545)_  Attending Physician: _Dr. N. Kothari_

NOTE: use second consultation sheet if necessary.

Signature: _____    Date: _____

CL-38 (Rev. 3/97). This form supersedes CL-38 (Rev. 4/96).

WHITE   - CHART
YELLOW - CONSULTANT
PINK    - REFERRING PHYSICIAN



# SAINT PETER'S UNIVERSITY HOSPITAL

## DISCHARGE INSTRUCTIONS/INFORMATION

Discharge
Date: _____  Time: _____          ☐ See Hospital and Nursing Home Transfer Form/Discharge Summary (NS-131)

*Ask your Pharmacist to discuss your Prescriptions with you.*

☐ See Discharge Medication Form (39603) for additional medications          ☐ Medications returned to patient

| Medication | Dose | Times | Education Provided | Prescription Given | Prescription at Home |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Allergies:

Smoking Cessation Counseling/Instructions given: ☐ Yes ☐ No ☐ Non-smoker | Oxygen Thearpy Handbook (NS-370) provided: ☐ Yes ☐ N/A

Written Instructions for:                                    ☐ Education Record (specify/attach copy):

Diet: _____                          Follow up Lab Testing:

Activity: _____                      Other instructions:

Weights:

When to call your doctor (worsening symptoms):

If medication or other pain relief measures are not effective, or if you (or your child) experience pain beyond what you consider acceptable, call your doctor or health care professional.

**FOLLOW UP CARE:**   Doctor/Date/Phone #: _____          Other/Date: _____

*Contact your doctor for any medical questions or concerns. This copy should be shown to your primary care doctor on your next visit.*

**Nutrition - Referral for questions/concerns: 732-745-8600 (Ext. 8472/8428):**

**Social Work Discharge Planning: 732-745-8522**   ☐ NA          Social Worker/Home Care Coordinator

Visiting Nurse Agency/Phone#:

Other Home Care Agency/Phone #:

Other Community Agency/Phone #:

Equipment/Phone #:

Resource Information/Education: _____

SW/HCC Business Card with telephone number provided and patient/family encouraged to call with questions after discharge.

I certify upon discharge that my ID bracelet number(s) as listed is (are) the same as that of my male/female infant(s) and that this is/these are my infant child/children #: _____ / _____ / _____

If applicable, Out of Hospital DNR Form given to: ☐ Patient/family ☐ Ambulance Attendant

Interpreter telephone service ☐ Interpreter: _____          (specify name) ☐ Telephone Device for the Deaf (TDD)

Instructions given to:

I was given a yellow folder entitled "Patient Education" and understand it is mine to take with me.

| These instructions have been explained and I have received a copy. | Signature of Pt/Resp. Person: |
|---|---|
| Discharge instructions sheet provided to Ambulance Attendant | Signature of Attendant: |
| Discharge RN Signature: | MD Signature: |

PATIENT COPY

Name: Edwards, Annette

Unit #: 326 7726

Hospital #: 9984570

Ins. Plan: C Care

**SAINT PETERS UNIVERSITY HOSPITAL**
**Adult Family Health Center**
123 How Lane, New Brunswick, NJ 08901
TIN: 22-1487330

**Patient Instructions and Encounter Form**

Date: 6/23/06
Appt Time: 3 —
Arrival Time: 2/9
Visit Type:
☐ New    ☐ UC    ☐ Follow-up

(co) Payment: _____
Cash ☐
Credit Card ☐
Check ☐ → Check # _____
Staff intials _____
8/13/45

### Rendering / Ordering Provider:

☐ Navan Kothari, MD
☐ Aldo Damiani, MD
☐ Kim Dixon, MD
☐ Beth Lewis, MD
☐ Michael Carson, MD

☐ MaryGrace Zetkulic, MD
☐ Demian Elder, MD
☐ David Alcid, MD
☐ Mary Ranjini, MD

Resident Modifiers:
☐ GC
☐ GE
Resident Name: Husain

### OFFICE VISITS

**NEW PATIENT**

| | |
|---|---|
| LEVEL 1- PROBLEM-FOCUSED | 99201 |
| LEVEL 2- EXP PROBL-FOCUSED | 99202 |
| LEVEL 3- DETAILED | 99203 |
| LEVEL 4- COMPR/ MOD MDM | 99204 |
| LEVEL 5- COMPR/ HIGH MDM | 99205 |

**EST PATIENT**

| | |
|---|---|
| LEVEL 1- MINIMAL | 99211 |
| LEVEL 2- PROBLEM-FOCUSED | 99212 |
| LEVEL 3- EXP PROBL-FOCUSED | 99213 |
| LEVEL 4- DETAILED | 99214 |
| LEVEL 5- COMPREHENSIVE | 99215 |

**CONSULTS- NEW OR EST PT**
**REFERRING PHYSICIAN:**

| | |
|---|---|
| LEVEL 1- PROBLEM-FOCUSED | 99241 |
| LEVEL 2- EXT PROBL-FOCUSED | 99242 |
| LEVEL 3- DETAILED | 99243 |
| LEVEL 4- COMPR/ MOD MDM | 99244 |
| LEVEL 5- COMPR/ HIGH MDM | 99245 |

**IMMUNIZATIONS**

| | | |
|---|---|---|
| DT | 90718 | V06.5 |
| Flu Vaccine | 90659 | V04.81 |
| Hepatitis A | 90632 | V05.9 |
| Hepatitis B | 90746 | V05.3 |
| MMR | 90707 | V06.4 |
| Lyme Disease | 90665 | V03.89 |
| Pneumo Vaccine | 90732 | V03.62 |
| PPD | 86585 | V03.2 |
| Tetanus | 90703 | V06.5 |
| Admin. Flu Vaccine | G0008 | V04.81 |
| Admin. Hepatitis B Vaccine | G0010 | V05.3 |
| Admin. Pneumococcal Vaccine | G0009 | V03.62 |

**OTHER SERVICES**

| | NEW PT | EST PT | CONSULT |
|---|---|---|---|
| Home Visits | 99341 | 99347 | |
| | 99342 | 99348 | |
| | 99343 | 99349 | |
| | 99344 | 99350 | |
| Prolonged Services | | 99354 | |
| Home Health | | | |
| Plan Certification | G0180 | G0179 | |

**LABORATORY**                    DX

Anti-nuclear Antibody
Basic Metabolic (Chem 7) Panel
CBC
Comprehensive Metabolic Panel
Cholesterol Total
Lipid Prof. (Trig, Chol, HDL, LDL)
Creatine/Bun
Electrolytes
Glucose (Blood)
Hemoglobin A1C (Gly, HGB)
Hepatic Function A Panel
Iron & Iron Binding/ Ferritin
Prostate Specific Antigen
Prothrombin Time/ INR
Rheumatoid Factor (RA/RF)
Sedimentation Rate (ESR)
TSH
T4 Free
Unnalysis with Micro
Urine Culture
24 hr Urine for Protein & Creatine Clearance
CPK                                    ICD#9
Other _____                    CODE
☐ LC    ☐ SK    ☐ SPUH

611.72

**PROCEDURES**

| | CPT | DX |
|---|---|---|
| Arthrocentesis (sm joint) | 20600 | |
| Arthrocentesis (med joint) | 20605 | |
| Arthrocentesis (large joint) | 20610 | |
| Cerumen Removal | 69210 | |
| Exc'n Skin Lesion <0.5 cm | 11440 | |
| EKG | 93000 | |
| Injection — 1/2cc via (Rt) deltoid via pm/cpn | | |
| Antibiotic (IM) | 90788 | |
| IM | 90782 | |
| Sub-q | 90782 | |
| Metrotrexate | 96400 | |
| Nail Debridement | 11720 | |
| Punch Biopsy | 11100 | |
| Nail Removal | 11750 | |
| Trigger Point/Tendon Sheath | 20550 | |
| Other _____ | | |

**RADIOLOGY**

ICD #9 CODE: _____

**MODIFIER**

☐ 25    ☐ 76

### PATIENT INSTRUCTIONS / CONSULTS

If medication or other pain relief measures are not effective, or if you (or your child) experience pain beyond what you consider acceptable, call your physician or health care professional

— Will get Bone Density Scan after Chemotherapy Completed!
— To get * G.I. appointment for Routine Colonoscopy this 2 months

I certify that the services covered by this claim have been received and requested that the payment for these services be made on my behalf. I authorize any noise medical or other information about me to release to the above stated carrier or its authorized agents any information for this or a related claim

Patient Signature: Annette R Edwards    Date: 6-23-06

Physician Signature: Zaheer Husain (651-4595)    Date: 6-23-06

Return to Office ofa 2 months for follow-up as needed
Call 732-745-6643 with any questions. After hours call 732-621-2260

Revised 2006

MED-06 (Revised 5/06) Non-Stock. This form supersedes MED-06 (Rev.11/05) Non-Stock.

St. Thomas Radiology Associates, LLC
P.O. Box 11839
St. Thomas, VI 00801
Telephone (340) 774-0265

## Diagnostic Radiology, Ultrasound, Mammography, CT & MRI

Name: EDWARDS, ANNETTE

Age:

Study: MAMMOGRAM

Doctor PICK UP

Date: 11/15/05

X-Ray No.

MAMMOGRAM:

Bilateral mammogram was performed and reveals a 1 x 1.4 cm mass in the upper outer portion of the left breast.

This has some indistinct margins and is of mammographic concern.

A spot compression of this area and sonography is recommended.

At the time of the sonography if indicated a needle biopsy should be performed.

No clustered malignant calcifications are seen.

No other abnormality is present.

IMPRESSION:

1 X 1.4 CM MASS IN THE UPPER OUTER PORTION OF THE LEFT BREAST WHICH SHOULD FOLLOWED WITH SONOGRAPHY AND AT THAT TIME IT IS INDICATED A NEEDLE BIOPSY SHOULD BE PERFORMED.

BIRADS 0.

Kab K. Kim, M.D.                    Page 1 of 1                    George I. Rosenberg, M.D.
  Radiologist                                                          Radiologist

**Mammography Facility Accredited by the American College of Radiology and Certified by the FDA**



CHECK CARD USING FOR PAYMENT

☐ MASTERCARD   ☐ VISA   ☐ DISCOVER   ☐ AMERICAN EXPRESS

CARD NUMBER _____   SIGNATURE CODE _____

SIGNATURE _____   EXP. DATE _____

SAINT PETER'S
UNIVERSITY HOSPITAL
254 Easton Avenue, New Brunswick, NJ 08901



0101

| STATEMENT DATE | AMOUNT DUE | ENCOUNTER NUMBER |
|---|---|---|
| 06/06/2007 | $0.00 | 10175072 |

| DUE DATE | STATEMENT # | SHOW AMOUNT |
|---|---|---|
| 06/21/2007 | 500219796 | PAID HERE $ |

**PAGE: 1 of 1**

652908

ANNETTE EDWARDS
54 APPLEMAN ROAD
SOMERSET, NJ 08873-1733

SAINT PETER'S UNIVERSITY HOSPITAL
PATIENT ACCOUNTING OFFICE
254 EASTON AVENUE
NEW BRUNSWICK, NEW JERSEY 08901

34084*T3Q0FQN0N000687

☐ Please check box if above address is incorrect or insurance information has changed, and indicate change(s) on reverse side.

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

| | | ENCOUNTER NUMBER 10175072 | | STATEMENT # 500219796 | | |
|---|---|---|---|---|---|---|
| DATE OF SERVICE | SERVICES PROVIDED / ACCOUNT ACTIVITY | | CHARGES PAYMENTS ADJUSTMENTS | INSURANCE PENDING AMOUNT | PATIENT BALANCE | *R |
| **Patient Name: ANNETTE EDWARDS** | | | | | | |
| 03/30/2007 | LABORATORY | | 73.00 | 73.00 | | |
| 03/30/2007 | LAB/CHEMISTRY | | 392.00 | 392.00 | | |
| 03/30/2007 | LAB/HEMATOLOGY | | 110.00 | 110.00 | | |
| 03/30/2007 | CLINIC | | 65.00 | 65.00 | | |
| 06/05/2007 | EXPECTED REIMBURSEMENT | | −519.47 | −519.47 | | |
| | | UNPAID BALANCES | 120.53 | 120.53 | 0.00 | 1 |

*3·13·07*

MESSAGES:

1 - YOUR INSURANCE COMPANY HAS BEEN BILLED AS A COURTESY TO YOU.  PLEASE REMEMBER THAT YOU ARE ULTIMATELY RESPONSIBLE FOR THE ABOVE BALANCE, AND WILL CONTINUE TO RECEIVE NOTICES TO KEEP YOU INFORMED OF THE STATUS OF THIS ACCOUNT.

SAINT PETER'S
UNIVERSITY HOSPITAL
254 Easton Avenue, New Brunswick, NJ 08901

0101

**PAGE: 1 of 1**

| | | |
|---|---|---|
| CHECK CARD USED TO PAY PAYMENT | | |
| CARD NUMBER | | SIGNATURE DATE |
| SIGNATURE | | EXP DATE |
| STATEMENT DATE 09/13/2007 | AMOUNT DUE $0.00 | ENCOUNTER NUMBER 10305491 |
| DUE DATE 09/28/2007 | STATEMENT # 500372801 | SHOW AMOUNT PAID HERE $ |

ANNETTE EDWARDS
54 APPLEMAN RD
SOMERSET, NJ 08873-1733

SAINT PETER'S UNIVERSITY HOSPITAL
PATIENT ACCOUNTING OFFICE
254 EASTON AVENUE
NEW BRUNSWICK, NEW JERSEY 08901

34084·T6H0HF687000613

Please check box if above address is incorrect or insurance information has changed, and indicate changes on reverse side.

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

| | | ENCOUNTER NUMBER 10305491 | | STATEMENT # 500372801 | |
|---|---|---|---|---|---|
| DATE OF SERVICE | SERVICES PROVIDED / ACCOUNT ACTIVITY | CHARGES PAYMENTS ADJUSTMENTS | INSURANCE PENDING AMOUNT | PATIENT BALANCE | R |
| **Patient Name: ANNETTE EDWARDS** | | | | | |
| 09/07/2007 | LABORATORY | 61.00 | 61.00 | | |
| 09/07/2007 | LAB/CHEMISTRY | 392.00 | 392.00 | | |
| 09/07/2007 | LAB/HEMATOLOGY | 130.00 | 130.00 | | |
| 09/12/2007 | BILLED CHARITY CARE 100% | | | | |
| | UNPAID BALANCES | 583.00 | 583.00 | 0.00 | 1 |

MESSAGES:

1 - YOUR INSURANCE COMPANY HAS BEEN BILLED AS A COURTESY TO YOU.  PLEASE REMEMBER THAT YOU ARE ULTIMATELY RESPONSIBLE FOR THE ABOVE BALANCE, AND WILL CONTINUE TO RECEIVE NOTICES TO KEEP YOU INFORMED OF THE STATUS OF THIS ACCOUNT.

**ANESTHESIA CONSULTANTS OF NEW JERSEY LLC**
285 DAVIDSON AVENUE
SUITE 301
SOMERSET, NJ 08873-4153

Business Phone (732)271-1400
Office Hours   8:00-5:00

| Credit Card Using For Payment | | |
|---|---|---|
| □ Visa □ Master □ Discover □ American Express | | |
| Card Number | CSC Num | Amount |
| Signature | | Exp. Date |

| Statement Date | Balance Due | Account # |
|---|---|---|
| 03/28/2007 | 175.00 | AC93002 |

| Minimum Payment | 25.00 | Show Amount Paid Here $ |
|---|---|---|

| Responsible Party | Remit To |
|---|---|
| ANNETTE EDWARDS<br>54 APPLEMAN ROAD<br>SOMERSET, NJ 08873 | ANESTHESIA CONSULTANTS OF NEW JERSEY LLC<br>PO BOX 27191<br>NEWARK, NJ 07101-0400 |

□ Please check box if address is incorrect or insurance information has changed, and indicate the change(s) on reverse side

**STATEMENT**

Please detach and return top portion with your payment

| Date | Ref # | Description | Charges and credits | Insurance pending | Guarantor balance |
|---|---|---|---|---|---|
| | | **Patient: EDWARDS, ANNETTE** | | | |
| 01/23/2007 | 58558 | Professional Physician Anesthesia Services | 1,000.00 | | **175.00** |
| 02/01/2007 | | Charity care write off | -800.00 | | |
| 02/05/2007 | | Guarantor Responsibility | | | |
| 02/26/2007 | | Ref # CASH from EDWARDS, ANNETTE | -25.00 | | |
| | | Total for patient: EDWARDS, ANNETTE   175.00 | | | |

*cash $ 175.00*
*Received on 3/28/07*
*Y. Golubeva*

| | Total due | 175.00 |
|---|---|---|

UNFORTUNATELY WE DID NOT RECEIVE YOUR PAYMENT THIS MONTH AS AGREED UPON. IF THERE IS A PROBLEM WITH THIS ACCOUNT, YOU NEED TO CONTACT OUR OFFICE IMMEDIATELY. PLEASE REMIT PAYMENT PROMPTLY TO AVOID FURTHER ACTION!!

| | Current | over 30 days | over 60 days | over 90 days | over 120 days | Total |
|---|---|---|---|---|---|---|
| Guarantor Responsibility | 0.00 | 175.00 | 0.00 | 0.00 | 0.00 | 175.00 |

Account # AC93002
ANESTHESIA CONSULTANTS OF NEW JERSEY LLC

| Please Pay This Amount |
|---|
| >>>>   25.00 |

D 160895

Page #   1

PO BOX 11679 - DEPT 595
NEWARK NJ 07101

**ADDRESS SERVICE REQUESTED**

| | CHECK CARD USING FOR PAYMENT |
|---|---|
| CARD NUMBER | V/N # | AMOUNT |
| SIGNATURE | | EXP. DATE |

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 2/18/07 | 1692.48 | 3267726 |

PB:     3267726  EDWARDS, ANNETTE          (800)871-3085

| SHOW AMOUNT PAID HERE | $ |
|---|---|

**ADDRESSEE:**                                                **REMIT TO:**

ANNETTE EDWARDS
54 APPLEMAN ROAD
SOMERSET NJ 08873

063

SPUH: PHYSICIAN BILLING SERVICES
PO BOX 11679 - DEPT 595
NEWARK NJ 07101

Illmalladldaladaladlmallladadlalladdaladalmlll

Illmlmlaallllmmalldaldlldaadlldaladlldaldal

☐ Please check box if above address is incorrect or insurance
information has changed, and indicate change(s) on reverse side.

**STATEMENT**   PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| | Physician services for ANNETTE EDWARDS #     3267726 | |
| | **Rendered by  PADMALATHA GURRAM** | |
| 01/23/07 58120 | DILATION AND CURETTAGE | 756.90 |
| 01/23/07 58558 59 | HYSTEROSCOPY, BIOPSY | 935.58 |
| 02/06/07 99024 | POSTOP FOLLOW-UP VISIT | .00 |
| | **Rendered by  DAVID ALCID, MD** | |
| 12/15/06 99213 GE | OFFICE/OUTPATIENT VISIT, EST | 114.00 |
| 02/07/07 Adj. | CHAR. CARE W/O | 114.00- |
| | **Rendered by  MARCUS PORCELLI, MD** | |
| 01/05/07 99212 | OFFICE/OUTPATIENT VISIT, EST | 84.00 |
| 02/07/07 Adj. | CHAR. CARE W/O | 84.00- |

```
*********************************************************************
* THANK YOU FOR SELECTING ST. PETER'S UNIVERSITY HOSPITAL AMBULATORY  *
* CARE GROUP.  YOUR PROMPT PAYMENT IS APPRECIATED.  FOR QUESTIONS     *
* REGARDING YOUR OB/GYN SERVICES PLEASE CALL 732/745-7945            *
* REGARDING YOUR NEONATOLOGY CHARGES PLEASE CALL 732/745-8600 EXT 8906 *
* ALL OTHERS, PLEASE CALL THE BILLING OFFICE AT 800/871-3085, 9-3:30  *
*********************************************************************
```

| ACCOUNT NUMBER | STATEMENT DATE | RESPONSIBLE PARTY | BALANCE DUE |
|---|---|---|---|
| 3267726 | 2/18/07 | ANNETTE EDWARDS | 1,692.48 |

ASTERISK (*) ITEMS ARE PENDING
INSURANCE RESPONSIBILITY. ALL
OTHER ITEMS ARE GUARANTOR
RESPONSIBILITY.

(800) 871-3085    SPUH: PHYSICIAN BILLING SERVICES
PO BOX 11679 - DEPT 595
NEWARK NJ  07101

221487330

| CURRENT | 31-60 DAYS | 61-90 DAYS | 91-120 DAYS | OVER 121 DAYS | PAGE 1 OF  1 BALANCE DUE |
|---|---|---|---|---|---|
| 1692.48 | | | | | 1692.48 |

ANESTHESIA CONSULTANTS OF NEW JERSEY LLC
285 DAVIDSON AVENUE
SUITE 301
SOMERSET, NJ  08873-4153

**Business Phone** (732)271-1400
**Office Hours**  8:00-5:00

Credit Card Using For Payment
☐ Visa  ☐ Mastercard  ☐ Discover  ☐ American Express
Card Number                          CSE Num | Amount

Signature                                    | Exp. Date

| Statement Date | Balance Due | Account # |
|---|---|---|
| 02/14/2007 | 200.00 | AC93002 |

| Minimum Payment | 25.00 | Show Amount Paid Here $ |
|---|---|---|

| **Responsible Party** | **Remit To** |
|---|---|
| ANNETTE  EDWARDS<br>54 APPLEMAN ROAD<br>SOMERSET, NJ  08873 | ANESTHESIA CONSULTANTS OF NEW JERSEY LLC<br>PO BOX 27191<br>NEWARK, NJ  07101-0400 |

☐ Please check box if address is incorrect or insurance information has changed, and indicate the change(s) on reverse side

**STATEMENT**

Please detach and return top portion with your payment

| Date | Ref # | Description | Charges and credits | Insurance pending | Guarantor balance |
|---|---|---|---|---|---|
| | | **Patient: EDWARDS, ANNETTE** | | | |
| 03/20/2006 | 19101 | Professional Physician Anesthesia Services | | | |
| 03/24/2006 | | Guarantor Responsibility | | | |
| 03/20/2006 | 19240 | Professional Physician Anesthesia Services | 1,650.00 | | |
| 03/24/2006 | | Guarantor Responsibility | | | |
| 05/08/2006 | | Ref # CASH from EDWARDS, ANNETTE | -200.00 | | |
| 06/04/2006 | | Ref # CASH from EDWARDS, ANNETTE | -200.00 | | |
| 07/05/2006 | | Charity care write off | -1,320.00 | | |
| 07/10/2006 | | Refund - Check # N/A to EDWARDS, ANNETTE | 70.00 | | |
| 10/11/2006 | 45378 | Professional Physician Anesthesia Services | 770.00 | | |
| 10/27/2006 | | Claim to CHARITY CARE | | | |
| 10/27/2006 | | Guarantor Responsibility | | | |
| 11/06/2006 | | Charity care write off | -616.00 | | |
| 11/17/2006 | | Ref # CASH from EDWARDS, ANNETTE | -154.00 | | |
| 01/23/2007 | 58558 | Professional Physician Anesthesia Services | 1,000.00 | | 200.00 |
| 02/01/2007 | | Claim to CHARITY CARE | | | |
| 02/01/2007 | | Charity care write off | -800.00 | | |
| 02/05/2007 | | Guarantor Responsibility | | | |
| | | **Total for patient: EDWARDS, ANNETTE** | 200.00 | | |

*Recvd. in Cash
$25. in 07
02-14-07
For DOS. 01-23-07
wasim*

| | | | | Total due | 200.00 |
|---|---|---|---|---|---|

| | Current | over 30 days | over 60 days | over 90 days | over 120 days | Total |
|---|---|---|---|---|---|---|
| Insurance Pending | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Guarantor Responsibility | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 |

**Account #** AC93002
ANESTHESIA CONSULTANTS OF NEW JERSEY LLC

| **Please Pay This Amount** |
|---|
| >>>>  25.00 |

M 155069

Page #    1

**CNTRL JERSY SURG.SPECIALISTS**
78 EASTON AVENUE
THIRD FLOOR
NEW BRUNSWICK, NJ 08901
Jeffrey Zavotsky, MD

ANNETTE EDWARDS
54 APPLEMAN ROAD
SOMERSET, NJ 08873

| Statement Date | Chart Number | Page |
|---|---|---|
| 03/28/2006 | EDWAN000 | 1 |

| Make Checks Payable To: |
|---|
| CNTRL JERSY SURG.SPECIALISTS |
| 78 EASTON AVENUE |
| THIRD FLOOR |
| NEW BRUNSWICK, NJ 08901 |
| (732)249-6112 |

| | | | | Previous Balance: | 0.00 |
|---|---|---|---|---|---|

Patient:  ANNETTE EDWARDS          Chart Number:  EDWAN000
Case:  SPUH 032006          Date of Last Payment: 3/15/2006     Amount: -125.00

| Dates | Procedure | Charge | Paid By Guarantor | Adjustments | Remainder |
|---|---|---|---|---|---|
| 03/20/06 | 19240 | 2,800.00 | | -1,800.00 | 1,000.00 |

| Amount Due |
|---|
| 1,000.00 |

**NOTE: Please write your CHART Number on the check. Thank you.**

# CENTRAL JERSEY SURGICAL SPECIALISTS, P.A.
### GENERAL, VASCULAR, LAPAROSCOPIC, ENDOVASCULAR & ONCOLOGIC SURGERY

Niranjan V. Rao, MD.  FACS*†
Jeffry Zavotsky,  MD.  FACS*
Jennifer R. Syrek, MD.  FACS*†
Board Certified in General* & Vascular Surgery†

Main Office:
78 Easton Avenue 3rd Floor
New Brunswick NJ 08901
Phone:    (732) 249-0360
Fax:       (732) 249-0035

50 Throckmorton Lane
Old Bridge NJ 08857
Phone: (732) 718-7951

53 Main Street
Sayreville NJ 08872

Date 04/18/06

This note is to confirm the fact that Edwards Annette (DOB 8/13/1945) has a balance of $1000.00 For date of service 03/20/06 for surgery at St. Peter's University Hospital.

As per the patient we are setting up a payment of $ 100.00 per month.

Signed Edwards Annette    Annette R Edwards

CNTRL JERSY SURG.SPECIALISTS
JEFFRY ZAVOTSKY MD
78 EASTON AVENUE
NEW BRUNSWICK, NJ 08901
(732)249-6112

| Statement Date | Page |
|:---:|:---:|
| 4/18/2006 | 1 |

ANNETTE EDWARDS
54 APPLEMAN ROAD
SOMERSET, NJ 08873

| Chart Number |
|:---:|
| EDWAN000 |

| Date | Document | Description | Case Number | Amount |
|---|---|---|---|---|
| | | **Previous Balance** | | **1,000.00** |
| Patient: ANNETTE EDWARDS | | Chart #: EDWAN000 | | |
| 3/28/2006 | 0603240000 | Billed | 44610 | 0.00 |
| 4/18/2006 | 0604180000 | CASH PAYMENT | 44610 | -100.00 |

| Total Charges | Total Payments | Total Adjustments | Balance Due |
|---|---|---|---|
| | | | |

— As of 11/07/06 patient has a zero
— balance

PAGE 01

| Receipt | No. | | |
|---|---|---|---|
| Payee Name: ACNJ<br>Address: 285 Davidson Ave, Suite 301<br>City State ZIP: Somerset, NJ 08873 | | Payer Name: Annette Edwards<br>Address: 54 Appleman Road<br>City State ZIP: Somerset, NJ 08873 | |

| Date | Description | Amount | |
|---|---|---|---|
| 11/07/06 | Paid in Cash | $154.00 | |
| | Received by Arlene | Subtotal | — | 29 |
| | | Tax | — | |
| Total | | $154.00 | |

| Re: | Annette Edwards | Pages: | Including Cover Sheet | 2 |
|---|---|---|---|---|
| Cc: | | | | |

☐ Urgent     ☐ For review     ☐ Please comment     ☐ Please reply     ☐ Please recycle

**Comments:**

Following please find charity care
reduction letter for your mom. She can be
put on a payment plan if she is unable to
pay this balance all at once.
   Have a good day.



# A n e s t h e s i a
## C O N S U L T A N T S
### OF NEW JERSEY LLC

Note: This facsimile is intended for the person(s) listed above and may contain legally privileged and confidential information. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or copy this facsimile. In addition, if you have received this facsimile in error, please immediately notify us by telephone and return the original message to us at the

| Receipt | No. |
| --- | --- |

Payee Name: _ACNJ_
Address: _285 Davidson Ave, 3rd Fl_
City, State ZIP: _Somerset, NJ 08873_

Payer Name: _Annette Edwards_
Address: _54 Applemon Rd_
City, State ZIP: _Somerset, NJ 08873_

| Date | Description | Amount |
| --- | --- | --- |
| 05/02/06 | _Partial payment for_ _Account # AC 93002_ | _200.00_ |
| | Subtotal | — |
| | Tax | — |
| **Total** | | _200.00_ |

_Cash_

_Balance on account is now_
_$1450.00_

EXHIBIT "D"



# CERTIFICATE OF
# COMPLETION

This award is presented to

**Delsic Rey**

For successfully completing the
Coach USA Training Program



Frederick S Sprengel
Director Of Coach USA Training School



**CoachUSA**
A STAGECOACH GROUP Company



_ **DELSIC REY**
NAME

_Signature_

_ **OCT. 31, 2008**
Expiration Date
**DRIVER**